Good morning, and may it please the Court, Erim Hassen for Defendant's Appellants. I'd like to reserve three minutes of my time for rebuttal, and I'll watch the clock. All right, I'll try to help you on that. This Court should reverse the denial of summary judgment and apply the functional approach articulated in Fort v. Washington to find that the role board psychologists here are entitled to quasi-judicial immunity for preparing a risk assessment report, like the parole psychologist in Williams v. Consovoy, a case out of the Third Circuit. This Court should also extend its reasoning in Burks v. Callion and DeMoran v. Witt, where it found that probation officers and psychiatrists, whose functions are virtually indistinguishable from the psychologist's function here, were entitled to quasi-judicial immunity. Like the psychologists here, these officials prepared reports for no other reason than to help adjudicators in their decision-making process. This Court concluded that these officials were an integral part of the judicial process and acted as an arm of the Court in preparing these reports. So tell me how the work of the psychiatrists are functionally related to the work of the decision-maker. What is it about the nature of their job, their function in the parole process that warrants quasi-judicial immunity? Your Honor, the function—so the only role they have in this context is to prepare a risk assessment to assist the parole board with answering the core question it needs to examine in a parole determination hearing, which is, is an incarcerated person too dangerous to be released from prison? And they use these reports prepared by the psychologists to inform that decision. But those reports are not definitive or binding, correct? They're not, Your Honor. And so that's where I think the dividing line comes in part. When following Antoine and Miller v. Gami, the Court repeated what's been said quite a lot, which is we look to whether there is a common law analog to this. Do you have a common law analog that you can cite? Your Honor, there's no common law analog to a parole psychologist. The parole board itself is a creation of statute, and these psychologists, their role was defined by a California regulation. But here, the Third Circus decision in Williams v. Consovoy is instructive because there the Court said that the lack of a common law analog is not fatal to the analysis. But one thing about the Third Circuit that I think is fatal is it doesn't even cite Antoine, which is really the landmark Supreme Court case here. So it's not really applying the test set out in Antoine. So I'm not sure why we should follow a circuit that is even at odds with our cases, like Miller v. Gami and Swift and others. Is there some compelling reason for us to jump ship on our existing precedent? Your Honor, I think even the existing precedent is instructive. In Burks v. DeMoran, for example, even though they were decided before Antoine, they extended immunity to officials whose functions are virtually identical to the psychologists here because, like the psychologists here, they prepare reports at the direction of the Court to inform the core question that the Court must answer. In those cases, the Court was making a sentencing decision, and these officials prepared reports. They examined the person who was being sentenced and made a recommendation. No. Burks was way before Antoine, correct? That's correct, Your Honor. But Burks essentially applied the functional approach. In the opinion, this Court said that the function of the psychiatrist was integrally related to that of the Court. And looking to the fourth decision — Well, if you use terms like integrally related or sufficiently related or closely connected to, then aren't you stepping back from a functional analysis? Your Honor, it's part of the functional inquiry. And this Court's decision in Ford v. Washington this year, it was helpful to clarify what that standard actually is. In Antoine, there was a hard line drawn between the function of a court reporter and that of a judge. And it was sort of an easy distinction to make because a court reporter, although important, doesn't exercise discretion in preparing verbatim transcripts. In Fort, the analysis was a little bit more nuanced, and Fort even examined Antoine and found that Antoine doesn't dictate a different result because there's a difference between a function being simply related to the judicial process and being integrally related. If I remember correctly, isn't Fort the recent one that talks about scheduling a hearing? Correct, Your Honor. Which is essential. We couldn't be here if somebody didn't schedule this hearing. That's right. And they used the word part and parcel in Fort.  And I think that's a lot different than saying are these individuals who are collateral to the process, but whose analysis we look at, whether they are part and parcel like the Fort. So I'm not sure that Fort particularly helps you. Well, Your Honor, the part and parcel language and the arm of the court language, in that these psychologists are mandated to prepare these reports. The state has recognized that a parole board on its own can't make the assessment of whether a person is a high, medium, or low risk or appropriate to be released from prison. They need to rely on a report. A psychologist employed by the board needs to prepare that report in advance of the hearing. And without that report, the hearing actually can't go forward. What's the difference, then, with the parole officer's situation in Swift? If anything, they seem quite closely analogous. The judge gets the parole officer's report, is not bound by it. Obviously, it's informative. It's one more thing to put into the judicial mixer. And then they come out with a decision. What's different here? Why wouldn't we be going against Swift if we were to adopt your position? No, Your Honor, because in Swift, the parole officers are distinguishable from the psychologists here. Because the parole officers there were, as this court said, performing more of a fact-gathering function like a law enforcement officer would. And they didn't even actually initiate the parole revocation proceeding that I believe was the subject of that case. Well, did the psychologist here initiate the process? No, Your Honor, but— So, I mean, I don't see the distinction. I mean, basically, you have someone who is assisting the court. So if I take your position, literally, you could take a Civil Rule 35 exam  Would you also give those individuals absolute immunity or quasi-judicial immunity? Your Honor, under the functional approach, it depends on how closely related that function is to the decision-making process and whether that person exercised some discretion in carrying out that function. Well, the function—you're familiar with Rule 35. Rule 35's judge says, I'd like you as a psychiatrist to examine this individual because I need to make some determinations. Isn't that equivalent to what they're asking the psychologist here to do? Yes, Your Honor, if that report is meant to inform one of the considerations the court needs to make when making a decision. So let's say that you're in a patent case, for example, and the court wants the — wants somebody independent to make a both factual and also legally related determination of what is the scope of these patents. Is that person appointed by the court to assist the court, but not part of the court? Is that person imbued with quasi-judicial immunity? Your Honor, I think so, yes, because that person would likely be the equivalent of a court-appointed expert who has been found to enjoy quasi-judicial immunity, similar to receivers and special masters who assist the court with gathering facts and managing cases. So what about a witness? A witness has to make some discretionary decisions in shaping the testimony. Why not a witness? That's part and parcel of the court process. We couldn't, in at least civil — both civil and criminal cases, operate without the assessment. And if you have a bench trial, then the judge has to take all that and make a determination. Would that also give the witnesses quasi-judicial immunity? Your Honor, a witness for a party is a little different than an expert appointed by the court, for example, because the policy, as articulated in Butts and Sellers out of this circuit, is that absolute immunity is necessary to preserve the integrity of the decisions that courts and adjudicators make, as well as people the court relies on to help with making those decisions. So in a case where, say, there's a trial and a witness is testifying for a party, it's not quite the same because there is advocacy involved. Whereas with a court, if a court appoints its own independent expert, the expectation is that the judgment will be independent. It won't be tainted by, you know, an interest that a litigant might have in a case. Well, you know, I hope that would be true, but it's not necessarily true. So if you have one of these court-appointed experts or adjuncts and they basically slam a party or take a position that makes that party's ability to succeed impossible, do they get qualified immunity? What if they lie in their report? So, Your Honor, the Butts court and Sellers also recognize that in extending absolute immunity, it's important that there are also procedural safeguards and other avenues of relief, so that if for some reason there was the sort of wrongdoing that you mentioned, that person should be able to challenge any decision based on that information on appeal. And in the context here, with the parole board, with the psychological report, for example, Mr. Gay could have challenged the findings of that psychological report by obtaining his own independent evaluation. He could have proceeded to the hearing and presented his own evidence, challenged that evidence, and if it didn't go his way, challenged the decision on habeas. So he didn't do those things here, Your Honors. He waived his hearing and he stipulated that he was unsuitable for parole. And he's actually now no longer in prison. But for the courts extending absolute immunity, it was important that these options should exist. I'm a little bit just perplexed by the last answer. He had all these options to challenge what was effectively a judicial decision, but he doesn't. Instead, he sues the psychologist, right? Correct, Your Honor. And then he's surprised when, for example, the district judge says, well, they have, you know, they don't have quasi-judicial immunity. What's the situation on that? Well, Your Honor, he had all those options available to him at the time. And in addition to these procedural safeguards, within the parole process, he could have presented objections to the report to the legal department employed by the parole board. And if he was truly disturbed by the questions he was asked, licensed psychologists are bound by professional standards. So he can report misconduct that way as well. But it's telling here that he circumvented all of those safeguards to file this 1983 action. And it actually underscores the importance of absolute immunity, because the policy is that these other safeguards should be relied on. Well, they would still have qualified immunity. It's not like they're out on the street after this. They would have qualified immunity, correct? Your Honor, this court, I believe in Sellers, said that qualified immunity isn't enough. It doesn't serve the public interest because— But would they have qualified immunity? That's a fairly yes-or-no question. Well, Your Honor, the district court said no, but it's a fact-specific inquiry. It subjects these people to litigation before that question is answered, whereas absolute immunity forecloses litigation. I didn't think the district court reached the issue of qualified immunity. He was just deciding whether or not they were entitled to quasi-judicial. In the order that's being appealed here, there was a prior motion for summary judgment where qualified immunity was raised, and the court denied qualified immunity. Thank you. I'll give you a little more time for your rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Alex Farley, counsel for Plaintiff Appellee Omar Gay. This court should affirm the district court's decision for two reasons. First, the Supreme Court's decision in Antoine v. Byers is binding precedent and must be applied. Second, under the test laid out in Antoine, defendant appellants Parsons and Goldsteins did not exercise discretion functioning comparable to that of judges. I want to pick up where Judge McKeown left off. It did strike me as a bit odd that he had an opportunity to challenge the psychologist's reports in any way he could under the circumstances in the administrative process. Now, I don't know exactly what he did in that process, but I think, didn't at the end of the hearing, he essentially conceded that he was not suitable? He didn't really question the reports? I believe so, Your Honor. Yes. And then he turns around and he brings a 1983 case against the psychologist. That strikes me as rather odd. I think the key here is that Mr. Gay was not objecting to the comprehensive risk assessment in the terms of that he could have been denied parole, but on the basis that the psychologists were asking him discriminatory racially and ethically motivated questioning. So what's the root of his claim? That he was discriminated against in his board of parole psychologist interview by Goldstein and Parsons. And the discrimination was manifested how, by the way, the questions that they asked him? That's correct, Your Honor. What's his remedy? It would be damages, Your Honor, and I think that to address your question about the public policy piece of this is that to determine if public policy requires extension of quasi-judicial immunity, we need to look at whether the proper exercise of Goldstein and Parsons' function would be subverted if subjected to individual suit. And Antoine also requires the examination that in the absence of empirical evidence demonstrating high volume of vexatious and burdensome lawsuits, then quasi-judicial immunity should not be extended. And here the answer is that if the board of parole psychologists, Parsons and Goldstein, are functioning lawfully and properly within their role, then there is no empirical evidence that would invite vexatious lawsuits. I don't think it would be unfair to hold liable Parsons and Goldsteins. Can you tell me, if you go back to Judge McEwen's question about damages, what's the theory of damages, that he was locked up too long because of what they said? Because he abandoned any right that he had to challenge what they said. So what's the theory of damage? Your Honor, it would not be damages tied to the denial of parole. It would just be damages related to the fact that he was discriminated against by these psychologists, by the way they're asking questions and the racially and ethnically motivated questions that they were asking him. Well, I don't want to jump ahead, and it might not be the same, but I'm thinking like Heck B. Humphrey. Basically, to have any outflow to this, you have to undermine the ultimate decision, which, as mentioned here, he's kind of abandoned any problem with the ultimate decision. So I'm still having trouble understanding what his damages would be, particularly if there is a kind of an analog to Heck B. Humphrey here. I think we get back to the issue before the court today, which is whether Antwon applies and if Parsons and Goldsteins are entitled to quasi-judicial immunity under Antwon. That doesn't answer the question. What does he get out of it? I mean, it basically says, you asked me racially discriminatory questions, and that then was fed. And the only reason they asked any question, not without characterizing them, was because they were asked to make an assessment. So are his damages some emotional distress at that moment? Yes, I believe so, Your Honor. I think that's what we would submit. And also, counsel mentioned that there's an earlier summary judgment motion that's not on appeal here. This is an interlocutory appeal where qualified immunity was denied. Is that correct? I believe so, Your Honor. What was the basis for denying qualified immunity? For the defendant appellant's motion for judgment on the appeal that this court heard, they also applied Antwon and found that Parsons and Goldstein did not exercise discretion functionally comparable to that of judges and affirmed the district court's order denying their motion for judgment on the pleadings. That was quasi-judicial immunity, I thought. There is a difference between qualified immunity and quasi-judicial immunity. Yes, Your Honor. And I don't remember seeing or maybe I just didn't look carefully enough, but I didn't see anything about qualified immunity, you know, where there is a claim that the allegations set forth a claim for relief, but the law is not clearly established at the time of the alleged violation. Will you look at the ñ anyway, look, that's needed, Your Honor, there for the moment. I want to ask you another question, which is, suppose the parole board conducted a hearing and these psychologists showed up and testified to what, you know, essentially what was in their report, but they're under oath and they testified. What kind of immunity do they get in that instance? I think that would be a very different analysis, but I still don't believe that they would be entitled to quasi-judicial immunity under Antwon. I think that the record is clear that when they prepare their comprehensive risk assessment, they are bound to determine whether Mr. Gay was a propensity for violence in very three strict categories, either low, moderate, or high risk, and that was the end of their inquiry. They did not make any decision whether Mr. Gay was entitled to parole or make any recommendation as to the ultimate decision of Mr. Gay's parole. So I think that would change the analysis, but not ñ they would not be entitled to quasi-judicial immunity just based on their appearance at the Board of Parole hearing. I'm not talking about just their appearance. I'm talking about their testimony. Under oath. Under oath. I think that still under Antwon, that testimony under oath just as to Mr. Gay's propensity for violence would not rise to the level of exercise and discretion functionally comparable to that of judges. Well, don't you want ñ you know, you don't want them ñ people who get up on the stand and testify, you don't want them to be subject to suit because of things they say in the courtroom, right? I think they go back to what you were saying to my colleague, Your Honor, about what if they lie on the stand, that there should be remedy available to those that they evaluate if they're acting outside of their function. Yeah, the remedy is called contempt for lying. I mean, as a decision-maker, I want witnesses to testify honestly and truthfully, and I have confidence. I know witnesses lie because I've seen it many, many times. But, you know, we like to operate on the notion that when a witness takes the stand, they're going to testify truthfully under oath. And, you know, a witness sitting right there and thinking, oh, you know, if I say this, I'm going to be sued. I understand, Your Honor, but that's not what the record is. That's not what's here. Yeah, that's not what the record is here. What occurred here is that Parsons and Goldstein engaged in investigatory and fact-finding functions. So they interviewed Mr. Gay. They reviewed his file. And their sole function was to prepare this comprehensive risk assessment that was confined to determining whether Mr. Gay was at a low risk, moderate risk, or high risk for violence. They then gave that comprehensive risk assessment to the Board of Parole hearing, and that was the end of their involvement with the Board of Parole hearing for Mr. Gay. They did not appear. They did not submit any affidavits. And Mr. Goldstein testified in his deposition that the Board of Parole has sole discretion to determine what weight to give to certain pieces of evidence, including their comprehensive risk assessment. And he even testified that he has seen Board of Parole hearing transcripts in which the Board of Parole did not even consider the comprehensive risk assessment prepared by Board of Parole psychologists. So what's the role of the statute that mandates that they do that assessment? Does that make any difference in this case? Does it distinguish any of the prior authority? I don't think it makes a difference in this case, Your Honor. This Court's decision, Miller, is clear that it doesn't matter if the court directed the investigatory or fact-finding functions or what arose to then make them do these functions. The test that needs to be applied is Antwon. So the State requires the psychologists to do the assessment. They are acting under the color of state law, I guess, and they're always subject to suit? Or is it something they said that makes them subject to suit? I think if they are not exercising discretion, functioning comparable to that of judges, as Antwon requires, they are subject to suit for anything that could violate an inmate's rights like what happened here with Mr. Gay. One case that you don't even mention in your brief is Castillo, which, of course, the psychologists have relied on. And it's post-Antwon, and it's out of our court in 2002. How does that case figure into your argument? I think Castillo is very different because, in that case, this court made a distinction between administrative tasks that are within the court's inherent power to control its docket. I think that's a very specific carve-out of those tasks. That's the bankruptcy trustee case? That's the bankruptcy trustee case, yes, where they scheduled a notice, a confirmation hearing, and did not give proper notice. I believe that's the facts. I remember correctly that trustees have some adjudicatory authority. They do. That's correct. So it's in combination with that and then with the court's inherent power to control its docket that they found that that specific action, not all actions are entitled to quasi-judicial immunity. But here, we're not – Parsons and Goldsteins are not engaging in administrative tasks that are inherent to the court's power to control its docket. Now, Mr. Gay, is that a prison now? No, he's been released, Your Honor. He's on parole? Yes. Well, at the time you filed the case, did you seek injunctive relief? He proceeded as a pro se plaintiff. I'm sorry, I cannot remember if he sought injunctive relief when he first filed his complaint. Thank you. But just going back, I would like to – for my first point of why Antwon applies as opposed to the related to old test, I think this court's decision in Swift makes clear that Antwon worked a sea change in how quasi-judicial immunity is examined and requires that Antwon's functional approach be applied. And in here, I think the record is clear that Parsons and Goldstein merely engaged in investigatory and fact-finding functions, which was not functionally comparable, exercising discretion functionally comparable to that of judges. How do you distinguish the Third Circuit? That was based on the old related to test, Your Honor, and did not apply Antwon, and as you said earlier, did not even mention Antwon. So under my review of the Third Circuit case from Antwon, they got it wrong, Your Honor. Let me ask you this. Is there a scenario where the parole board could make these decisions without these experts? Yes, they can. And Mr. Goldstein testified in his deposition that he has seen circumstances where they did not even consider the comprehensive risk assessment and made their parole decision without even considering whether the inmate was propensity for low, moderate, or high risk. The discretion that the Board of Parole has. Apparently, the state reorganized the way in which they conduct the parole interview process. Is that right? Or do you... I thought I read something to that effect in the state's brief. I'm not sure about that, Your Honor, but I think the reference... all came about as a way of expediting the parole hearings for the prisoners. Oh, I see, Your Honor, yes. The Board of Parole psychologists were created as an arm of the Board of Parole hearings to assist. But Mr. Goldstein testified that even so, they're created an arm of the Board of Parole hearings that the Board of Parole is still given sole discretion to consider what weight to give to each piece of evidence. So there are circumstances in which the comprehensive risk assessment prepared by the Board of Parole psychologists are not even considered. Okay. Thank you. Thank you, Your Honor. I appreciate your time. If there's no other questions... Thank you. No, thank you. So if you could please put two minutes on the clock. Your Honors, if this Court applies the restrictive reading of Antoine that my colleague suggests, that immunity is limited only to officials who make binding decisions and resolve disputes between the parties, scores of officials who've enjoyed quasi-judicial immunity for decades would need to be stripped of that immunity. For example, prosecutors, special masters, receivers, law clerks, who don't actually make judge-like decisions, but are part and parcel of the adjudicatory process. And to find that that precedent no longer applies, this Court would need to find that it's clearly irreconcilable with Antoine. I don't think prosecutorial immunity, which has a clear common law analog, would go away. And aren't the law clerks similar to this administrative function that's part and parcel of the court, which is different than the psychologists, it would seem to me. Perhaps a better comparison is the psychiatrists and probation officers in Berks and DeMoran, where they performed a function almost indistinguishable from the function performed here. And those cases also predate Antoine. And to find that that reasoning no longer applies to extend immunity here, the Court would need to find that those cases are clearly irreconcilable with Antoine. And it's not enough that Antoine would just cast doubt on that reasoning. If the Court can apply that precedent without running afoul of Antoine, it must do so according to the core civic decision that this Court decided this year. It seems to me, if I'm reading the record right, that you still have the option to go back and argue for qualified immunity. Is that right? Your Honor, at this stage, we're at the summary judgment stage. If the motion is denied, parties would proceed to trial. We've already raised that argument before the Court. Where is that? Because when it first came up to the Ninth Circuit, the question was you really didn't have enough of a record to know how did these psychologists figure into their parole board. So that's what the Ninth Circuit considered. Sent it back. Police developed the record. And now we have a decision here on the district court determining that you do not have quasi-judicial immunity. Where in the record is it that the district court judge that ruled that there is not qualified immunity? A lot of times these terms get kind of mushed together, I think. Your Honor, the procedure here was interesting. We actually started with a motion for summary judgment where we raised qualified immunity that was denied. And then we did a motion for judgment on the pleadings, which came up before this Court. And then we filed another motion for summary judgment, which is now before this Court. So conceivably we could file another motion and see qualified immunity again. But, again, qualified immunity isn't enough to protect the interests. I understand the difference, and I understand why they would be concerned. It makes perfect sense. Your Honor, just to mention Williams. Williams does apply here. It's instructive here because although it didn't explicitly cite Antwon, it applied the functional approach. And it relied on Butts to articulate the same policy as to why absolute immunity would apply in that situation. And it examined the nexus of the psychologist's function with the parole board's adjudicatory process and decided that it was appropriate to protect it with absolute immunity to protect the integrity of the parole board's decision. And just because the psychologist doesn't actually make the decision doesn't mean that they're not entitled to absolute immunity because they examine the core question that the parole board must answer. So it's necessary for that opinion to be objective and free and clear from the fear of litigation so that the parole board has the best information before it when making an important decision like whether to release somebody from prison. Thank you. I think we have your argument in mind. Thank both counsel for your argument this morning. The case of Gaye v. Parsons is submitted.
judges: McKEOWN, PAEZ, Molloy